IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SCOTT CURTIS,

    *Plaintiff,*

vs.

VIEGA, INC. and VIEGA, LLC.,

    *Defendants.*

Case No. 21-1010-EFM

## MEMORANDUM AND ORDER

Two motions are before the Court in this personal injury action arising from a forklift accident at the warehouse of Defendants Viega, Inc. and Viega, LLC. Plaintiff Scott Curtis has moved for apportionment of the settlement he has reached with Defendants. Mitsui Sumitomo Marine Management, the workers compensation carrier for Plaintiff's employer Heubel Material Handling, has moved to intervene in the action. The present Order addresses the second motion.

### I.    Factual and Procedural Background

Plaintiff alleges that he suffered injuries on December 19, 2019 while he was servicing forklifts at Defendants' warehouse through their negligence. Plaintiff filed this action on December 17, 2020. The Court denied Defendants' motion for summary judgment, and a three-day trial on Plaintiff's claims was scheduled to begin June 22, 2022.

On May 20, 2022, counsel for Plaintiff moved to continue the trial, stating he had been diagnosed with a heart condition, that a delay of surgery was not possible, and that "[a]ccordingly, surgery has been scheduled for March 3, 2022 [sic]." Counsel stated that the surgery would preclude him from working for two to thee months.

On June 3, 2022, Plaintiff submitted a Notice of Settlement, stating "this matters [sic] had been settled . . . through informal negotiations between the parties." Plaintiff further stated that he anticipated filing a motion to allocate all of the settlement proceeds to his claim for loss of consortium. The motion to allocate, filed on June 6, seeks to designate 100% of the settlement proceeds to the loss of consortium claim alone. The motion states that "[a]s a material part of the settlement, Plaintiff requested Defendant's to not object" to the allocation.

The next day, on June 7, Mitsui moved to intervene in the action, arguing that the proposed allocation was incorrect, and would have the effect of avoiding its lien on Plaintiff's recovery under Kansas law. Mitsui states that, as the workers compensation carrier for his employer, it has paid Plaintiff $198,968.50 in total benefits, including $104,063.50 for medical expenses, and $94,905.00 for wage indemnity.

## II.    Legal Standard

Mitsui seeks both mandatory intervention under Rule 24(a)(2), arguing it has an interest in the action which the existing parties do not adequately represent, and permissive intervention under Rule 24(b)(1)(B), because it has a claim which shares a common question of law or fact with the present case. For both forms of relief, Mitsui notes that Kansas workers compensation law, as set forth in K.S.A. § 44-504(b), grants it a lien on any recovery Plaintiff obtains (other

than for loss of consortium) against a non-employer, and further grants a right to intervene to protect that interest.[1]

Intervention as of right is authorized where a movant "[1] claims an interest relating to the property or transaction that is the subject of the action, and [2] is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless [3] existing parties adequately represent that interest."[2] "Representation is adequate when the objective of the applicant for intervention is identical to that of one of the parties."[3] Representation is not adequate if the movant demonstrates a possible "divergence of interest."[4] The burden is on the movant to show the potential for a divergence of interests, but that divergence "need not be great."[5] Tenth Circuit "generally follows a liberal view in allowing intervention under Fed. R. Civ. P. 24(a)."[6]

Permissive intervention may be allowed if the court finds that (1) the party seeking relief has filed a timely motion, (2) the movant has a claim or defense that shares common questions of law or fact with the main action, and (3) that intervention will not unduly delay or prejudice the

---

[1] The statute itself grants this right to "the employer" of the injured worker. However, another provision of the Workers Compensation Act, K.S.A. § 44-532(a) "provides that an insurance carrier is subrogated to the rights and duties of the employer." *Employers Mut. Cas. Co. v. Miner*, 6 F.2d 1232, 1235 (D. Kan. 1998). As a result, Kansas courts have concluded that § 44-504(b) also creates a lien on behalf of a workers compensation insurer who has provided benefits to the injured worker on behalf of the employee. *See Estate of Taylor v. Fanuc America Corp.*, 2021 WL 5758493, at *2 (D. Kan. 2021).

[2] Fed. R. Civ. P. 24(a)(2); *see also WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009); *Bank Midwest v. R.F. Fisher Elec. Co.*, 2020 WL 1904020, at *3 (D. Kan. 2020).

[3] *Coal. of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 845 (10th Cir. 1996) (citations and quotation marks omitted).

[4] *Id*.

[5] *Id*.

[6] *Elliot Indus. Ltd. P'ship v. BP Am. Prod.*, 407 F.3d 1091, 1103 (10th Cir. 2005) (citation omitted).

original parties' rights.[7]  Intervention under Rule 24(b) is within the discretion of the Court.[8] When presented with a motion for permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice adjudication of the original parties' rights."[9]

### III.  Analysis

Plaintiff's opposition to the motion to intervene rests entirely on the argument that the request is untimely. Plaintiff makes no argument that the other elements of intervention are not present.

Mitsui has submitted two declarations in conjunction with its motion. The first, from the HR Director for Heubel Material Handling (Plaintiff's employer) states that her search of the company's records found no indication that Heubel had ever been notified of the present personal injury action. The second, from one of Mitsui's attorneys in Salina, Kansas, states that he was unaware of this lawsuit until June 3, 2022, when an unrelated health care client informed the attorney's law firm that the client had received a subpoena to testify at trial. The attorney then searched the docket and identified the present action.

Plaintiff argues that Mitsui "had actual notice of this claim since the date of the accident, December 19, 2019," as it has "provided Workers Compensation benefits through Plaintiff's employer at the time." But an accident does not always result in the injured worker filing a lawsuit for damages against a third party. Notably, Plaintiff does not affirmatively state he ever sent notice of this lawsuit to Mitsui.

---

[7] *Bank Midwest*, 2020 WL 1904020, at *3.

[8] *Huff v. CoreCivic, Inc.* 2020 WL 430212, at *2 (D. Kan. 2020) (citing *City of Stillwell v. Ozarks Rural Elec. Co-op Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996)).

[9] *Id.* (citing Fed. R. Civ. P. 24(b)(3); *see also Tri-State Generation & Transmission Ass'n, Inc. v. N.M. Pub. Regulat. Comm'n*, 787 F.3d 1068, 1069 (10th Cir. 2015) (upholding district court's denial of permissive intervention where intervention would "burden the parties with additional discovery")).

As noted earlier, Plaintiff moved for allocation of the settlement on June 7, 2022, and filed an amended motion the following day. Mitsui's motion on June 8, 2002, thus occurred within four days of learning of the existence of this action, and within one day of Plaintiff's motion to apportion the entire settlement to a loss of consortium claim, effectively placing the recovery out of the reach of the insurer.

The Kansas workers compensation statute[10] grants the employer a lien for amounts recovered from a third party, except for the amount "determined by a court to be loss of consortium or loss of services to a spouse." This determination may be made by evidentiary hearing, under which the court "determine[s] what portion is attributable to losses compensable under workers compensation and what portion is attributable to noncovered losses, such as the loss of consortium."[11]

Whether a motion to intervene is timely is "determined 'in light of all the circumstances' " of the case,[12] including "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness."[13] The question of the timeliness of a motion for

---

[10] K.S.A. 44-504(b).

[11] *Jerby v. Truck Ins. Exch.*, 36 Kan. App. 2d 199, 138 P.3d 359, 365 (2006).

[12] *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010), citing *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984).

[13] *See Laroe Estates, Inc. v. Town of Chester*, 828 F.3d 60, 66-67 (2nd Cir. 2016) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994)), *vacated & remanded on other grounds*, 137 S. Ct. 1645 (2017).

intervention is addressed to the sound discretion of the trial court.[14]   Timeliness is measured from when the intervenor was on notice its interests were not adequately represented.[15]  "When competing inferences may be drawn from the same facts, this court is required to construe the facts in favor of the would-be intervenor."[16]

The text of K.S.A. 44-504(b) has relevance to the issue of timeliness.  The statute provides for subrogation "[i]n the event of recovery from [a person other than the employer or a co-worker] by the injured worker," granting "a lien therefor against the entire amount of such recovery, excluding any recovery, or portion thereof, determined by a court to be loss of consortium or loss of services to a spouse."  The statute specifies that "[t]he employer shall receive notice of the action, have a right to intervene and may participate in the action."

This text of the statute thus indicates that Mitsui has not unduly delayed in two ways. First, although the statute does not expressly state *who* is to give notice to the employer, in context the person to supply such notice would surely be the injured worker who has brought the third-party action.  Further, the statutory right to intervene expressly arises upon "notice *of the action*" against a third party,[17] not simply (as Plaintiff would have it) notice of the original workplace accident.

---

[14] *Lumberman's Mut. Cas. Co. v. Rhodes*, 403 F.2d 2, 5 (10th Cir. 1968), *cert. denied*, 394 U.S. 965 (1969).

[15] *Tyson Foods*, 619 F.3d at 1232.

[16] *Davis v. Lifetime Capital, Inc.*, 560 F. App'x 477, 492 (6th Cir. 2014) (citing *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991)).

[17] K.S.A. § 44-504(b) (emphasis added).

In *Smith v. Russell*,[18] the Kansas Supreme Court upheld the denial of a motion to intervene by a workers compensation carrier as untimely. The court stressed that "Smith [the injured worker] provided notice to [the carrier] EMC that he had filed a civil action against the [tort-feasor] Russells, as required by K.S.A. 44–504(b)."[19] The carrier, however, not only failed to intervene prior to the settlement, but brought its motion after judgment had been entered. Given that additional delay, the district court had no jurisdiction to grant the intervenor any relief from the judgment.

Other courts which have found untimely motions to intervene by workers compensation carriers have also pointed to evidence showing the insurer had near-contemporaneous notice of the third-party tort action, but waited many months before moving to intervene.[20] Here, there is no evidence that Mitusi knew of this action until June 3, 2022, four days before moving to intervene.

Plaintiff points to *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc*.,[21] as precedent for denying a motion to intervene as untimely, but that case provides little guidance here. In that case, the Cherokee Nation attempted to intervene in an pollution action brought by the State of Oklahoma against a poultry producer. The district court denied the motion to intervene and the

---

[18] 274 Kan. 1076, 58 P.3d 698, 705 (2002).

[19] *Id*. at 704.

[20] *See May v. Gale Tschuor Co*., 2010 WL 1837769, at *9 (N.D. Ind. May 5, 2010) (stressing the employer "does not state, for example, that it was completely unaware of the existence of this lawsuit, that there was some change in the Illinois Workers' Compensation Act that caused the company to fear that its right of reimbursement was not protected, or some other possibly viable explanation" for waiting for two years after personal injury action was failed); *Rhodes v. Ohse*, 1998 WL 809510, at *2 (N.D.N.Y. 1998) (finding untimely the attempted intervention by workers compensation carrier some 14 months after it learned of plaintiff's persoanl injury action)

[21] 619 F.3d 1223 (10th Cir. 2010).

Tenth Circuit affirmed. While both the State and the Nation sought injunctive relief to stop defendant's alleged pollution, only the Nation's proposed intervenor complaint sought CERCLA[22] and common law nuisance damages for the Nation's pollution remediation costs. As a result, the Tenth Circuit observed:

> [e]ither the Nation's interests were never represented by the State (the interest in past CERCLA damages and in all common-law-nuisance compensatory and punitive damages) or were still being adequately represented by the State (the interest in injunctive relief). In particular, with respect to these interests the Nation could not point to some event shortly before it moved to intervene that could explain a sudden effort to intervene. On this basis alone, the district court could properly find an unjustified delay by the Nation in seeking to intervene.[23]

Here, the evidence before the court establishes that Mitsui had no knowledge of the present action until just before its motion to intervene.

The case is also distinct in terms of the *Tyson* court's prejudice assessment. The court found that the motion to intervene would have caused a substantial delay. The Nation's proposed intervenor complaint was filed three weeks before the scheduled trial, and would have advanced new causes of action which would require additional discovery. The court noted the extensive nature of the parties' preparations for the upcoming complex trial:

> With the start date set for less than three weeks from the date of the Nation's motion to intervene, the parties had necessarily already arranged their schedules and the schedules of their witnesses. For example, the numerous attorneys (the record shows that at the hearing on the motion to intervene, the State had 11 attorneys and the six defendants were represented by 18 attorneys from nine firms) would have removed other obligations from their calendars for the next several months.[24]

---

[22] Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607.

[23] *Tyson Foods,* 619 F.3d at 1235.

[24] *Id*. at 1236.

Further, the district court had found the Nation would suffer no prejudice by denial of the intervention, as it could bring its damages claims in a separate action. On appeal, the Tenth Circuit rejected as "more speculative than real,"[25] the Nation's argument that it could be injured as a practical matter if the State lost at trial.

Here, those prejudice calculations are reversed. There is no pending trial that will be delayed—the relatively simple personal injury case has been settled, and the only the remaining issue is how to apportion the settlement. Further, if Plaintiff succeeds in apportioning the entire settlement as consortium damages, which are immune from the statutory lien, Mitsui faces substantial prejudice.

As noted earlier, Plaintiff suggests the 100% consortium allocation (or at least an agreement for Defendants not object to the allocation) was a key part of the settlement agreement. But this does not render intervention unfairly prejudicial to Plaintiff. Whether or not Mitsui intervenes, the Court has an independent duty under K.S.A. 44-504(b) to determine if the settlement has been fairly allocated. And even if the Court were to assume that the 100% allocation was so material to the settlement that it would not have been achieved otherwise, there is still no unfair prejudice to Plaintiff. In the absence of the settlement, the "prejudice" to the Plaintiff is simply that he would have to present his claims at trial—a trial which Plaintiff has otherwise explicitly sought to postpone for months due to the health of counsel.

Finally, as the Tenth Circuit pointed out in *Tyson*, to merit a denial of intervention for untimely delay, "the prejudice to other parties must be prejudice caused by the movant's delay,

---

[25] *Id*. at 1238.

not by the mere fact of intervention."[26]  Even assuming that Mitsui should (or could) have intervened earlier, and further assuming an evidentiary apportionment hearing will cause some expense for the parties, this is not an expense *due to delay*.  Had Mitsui intervened the same day this case was filed, we would still be in the same position we are now:  having to fairly apportion the settlement.  There is thus no increased marginal expense to the parties due to the timing of the intervention.

The Court grants Mitsui's motion to intervene, and directs Intervenor to file its response to the Motion to Apportion within 14 days of this Order, and the Court will schedule an evidentiary hearing on the motion by separate order.

**IT IS THEREFORE ORDERED** that the Motion to Intervene of Mitsui Sumitomo Insurance Co. (Doc. 64) is hereby **GRANTED.**

**IT IS SO ORDERED**.

Dated this 18th day of July, 2022.

*[signature]*

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[26] *Id*. at 1236.